# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* S.J., A.J.-1, and A.J.-2

No. 18-0272 (Braxton County 17-JA-10, 11, and 12)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.J., by counsel Andrew Chattin, appeals the Circuit Court of Braxton County's February 26, 2018, order terminating his parental rights to S.J., A.J.-1, and A.J.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), David Karickhoff, filed a response on behalf of the children in support of petitioner's appeal. On appeal, petitioner argues that the circuit court erred in finding that he failed to accept responsibility for his actions, denying him an improvement period based upon findings that he would be unable to participate in the same, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother. At the time of the filing, petitioner was incarcerated on drug-related charges. According to the petition, in February of 2017, the children suffered an event which rendered them unresponsive while in the care of the mother. The children were transported to a hospital in Braxton County, West Virginia, but remained unresponsive and were then transferred to a hospital in Monongalia County, West Virginia. The DHHR alleged that the children were unresponsive for over twenty hours despite medical personnel administering Narcan and other medical assistance.[2] Test results later revealed that S.J. tested positive for a synthetic marijuana.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as A.J.-1 and A.J.-2, respectively, throughout this memorandum decision.

[2]The circuit court later found that the children had been unresponsive for approximately twelve hours, rather than twenty.

Because all of the children exhibited the same symptoms upon admission, the medical personnel concluded that all three children ingested the same substance. However, the mother denied possession or personal use of the substance.

The DHHR filed an amended petition in April of 2017 after further investigating the matter. While the children were hospitalized, the mother notified the medical personnel that A.J.-1 had a similar incident a few months prior wherein she was rendered unresponsive when she fell off of a couch. The DHHR alleged that the child was rendered unresponsive for forty-eight hours at that time but was not definitively diagnosed, despite undergoing a series of medical tests. The child's pediatrician was contacted and he stated that A.J.-1 had no visible injury to her head and noted that, had she fallen as alleged, the child would have put her hands out to catch herself, suggesting that she would not have been rendered unresponsive by the incident described by the mother. The DHHR, therefore, alleged that this incident arose from the child ingesting synthetic marijuana rather than an alleged fall. Regarding the February of 2017 incident, the DHHR alleged that the water in the mother's home was tested but did not contain anything that would have caused the children to test positive for synthetic marijuana.

In May of 2017, a second amended petition was filed wherein the DHHR alleged that it received audio recordings of phone calls between petitioner, who remained incarcerated, and the mother. According to the DHHR, petitioner and the mother spoke to each other using codes, indicating that they were attempting to disguise their drug use. For example, one recording indicated that the mother informed petitioner that one of the children tested positive for synthetic marijuana at which point, petitioner asked how that was possible. The mother responded, "[R.J.], I don't know, but come on." Based on the recordings, the DHHR alleged that petitioner knew at the time his children were being treated in the hospital that they might have ingested synthetic marijuana, but failed to take any action to ensure they received proper medical treatment. Further, it alleged that petitioner knew the mother was manufacturing the drug in the family home and providing it to him in jail, thereby exposing the children to synthetic marijuana.

The circuit court held an adjudicatory hearing in June of 2017, during which petitioner stipulated to the allegations contained in the petition. In November of 2017, the circuit court held a dispositional hearing wherein petitioner requested a post-adjudicatory improvement period. Petitioner testified that he remained incarcerated and that his earliest parole date would be in October of 2018. A DHHR worker also testified that after his parole, petitioner would be transferred to Ohio where he would serve an eighteen-month sentence in prison. A report of petitioner's psychological evaluation was submitted into evidence and indicated that his prognosis for parental improvement was poor due to his attempt to cover up drug-related activities, failure to accept responsibility for his actions, and difficulty in obtaining treatment because of his current and pending incarceration. After hearing argument, the circuit court took the matter under advisement and later issued an order in February of 2018, denying petitioner's request for a post-adjudicatory improvement period and terminating his parental rights. Specifically, the circuit court found that petitioner failed to accept responsibility for his actions and take appropriate actions to protect his children. As such, the circuit court found that there was no reasonable likelihood that he could correct the conditions of abuse in the near future and

that termination was necessary for the children's welfare. It is from the February 26, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in finding that he did not accept responsibility for the conditions of abuse and neglect. He asserts that he stipulated to the allegations contained in the petition and thus, took responsibility for his actions. We disagree. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Although petitioner stipulated to the allegations of abuse and neglect in the petition at adjudication, he later evaded addressing questions at the dispositional hearing regarding his conversations with the mother wherein they used codes to disguise their drug use. Moreover, petitioner's psychological evaluation report indicated that he failed to accept responsibility for his actions and denied any drug use in the home despite evidence to the contrary. Based on the evidence, the circuit court found that petitioner failed to take responsibility for his actions. We agree and find that petitioner failed to acknowledge the issues of abuse and neglect. We have held that "[a] reviewing court cannot assess witness

---

[3]The parents' parental rights were terminated below. The children were placed in the home of the maternal grandmother with a permanency plan of adoption therein.

credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As the trier of fact, the circuit court was in the position to hear testimony, weigh credibility, and make determinations regarding whether petitioner meaningfully accepted responsibility for his actions. Accordingly, we find no error in the circuit court's finding.

Petitioner next argues that the circuit court erred in denying him an improvement period. Specifically, petitioner argues that the circuit court erroneously found that he was unable to participate in an improvement period when he testified that he was willing to get help for his drug addiction problem and would comply with any services offered. We find petitioner's argument to be unpersuasive. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *Charity H.*, 215 W.Va. at 215, 599 S.E.2d at 638.

Here, petitioner failed to demonstrate that he was likely to fully participate in an improvement period. Petitioner failed to meaningfully accept responsibility for his actions by attempting to evade questions during his testimony at the dispositional hearing and denying drug use in the home during his psychological evaluation. As mentioned above, failure to acknowledge the truth of allegations pertaining to abuse and neglect renders an improvement period an exercise in futility. *Timber M.*, 231 W.Va. at 55, 743 S.E.2d at 363. Moreover, petitioner remained incarcerated at the time of the dispositional hearing and would not have been able to meaningfully participate in an improvement period. Petitioner testified that he would not be released on parole until October of 2018, at the earliest, and had been unable to begin classes provided by the prison due to there being a waitlist. Further, testimony established that after being paroled, petitioner would have to serve an eighteen-month sentence in Ohio. As such, petitioner failed to demonstrate that he would be able to meaningfully participate in an improvement period and the circuit court did not err in denying him the same.

Petitioner further argues that the circuit court erred in terminating his parental rights. Specifically, petitioner argues that he had a strong bond with the children and that his parental rights should not have been terminated without first granting him an improvement period so that he could correct the conditions of abuse. He also argues that the circuit court should not have terminated his rights based solely upon his incarceration. We find that petitioner is entitled to no relief in this regard.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is

4

no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

The record demonstrates that there was sufficient evidence upon which to terminate petitioner's parental rights due to his continued incarceration, failure to accept responsibility for his actions, and lack of bond with the children. As mentioned above, testimony established that petitioner was incarcerated and unable to meaningfully participate in services aimed at addressing the conditions of abuse for the foreseeable future. Contrary to petitioner's assertions, "this Court has never held that incarceration can not be the sole basis for terminating parental rights." *Cecil T.*, 228 W.Va. at 96, 717 S.E.2d at 880. While petitioner's incarceration certainly contributed to the circuit court's decision, the record demonstrates that it was not the sole basis upon which the circuit court terminated his parental rights. The circuit court also found that petitioner failed to accept responsibility for his actions, and therefore, was unable to properly address the conditions of abuse. Moreover, while petitioner argues that he had a strong bond with the children, a review of the record does not support such assertion. The mother testified that petitioner did not have a strong bond with the children due to his incarceration. Petitioner's effective sentence date of October of 2015 meant that he had been incarcerated from the time A.J.-1 was eighteen months old and for the entirety of A.J.-2's life. While petitioner argues that he should have been granted an improvement period prior to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Having reviewed the record, we agree that there was sufficient evidence for the circuit court to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. As circuit courts are directed to terminate parental rights upon such findings, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 26, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 12, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating

6